# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CUMBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-CV-3511 |
| | ) | |
| DR. PARTHASARATHI GHOSH et al. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS GHOSH AND WEXFORD HEALTH SOURCES, INC.'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff John Cumbee, an inmate at Stateville Correctional Center, filed this lawsuit under 42 U.S.C. § 1983 over failures to promptly and properly treat his injured right shoulder over six year period. Dr. Parthasarathi Ghosh was the Medical Director at Stateville Correctional Center over the relevant period and Wexford Health Sources, Inc. ("Wexford") was the corporation that provided medical services to inmates at Stateville. Both of these defendants have moved for summary judgement. For the reasons discussed below, the motion is denied as to Dr. Ghosh and granted as to Wexford.

## BACKGROUND

All facts and inferences are construed in favor of Cumbee as the nonmoving party. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Facts are drawn from the plaintiff and defendant's statements of facts filed under local rule 56.1 and the supporting exhibits as needed. John Cumbee arrived at Statesville in October of 2003 and was seen by an intake doctor. Pl. Local Rule 56.1 Statement of Facts ¶ 2, ECF No. 143 ("PSOF"). The parties dispute exactly when Cumbee first raised his shoulder problem with medical staff, but the latest possible date was December 23, 2004. *See* PSOF ¶ 4, Def. Local Rule 56.1 Statement of Facts ¶ 8, ECF No.

133 ("DSOF"). At this December 2004 appointment, Dr. Ghosh prescribed physical therapy and a low bunk permit for Cumbee's shoulder problem. *Id.*

The parties dispute the extent to which physical therapy was helpful, but it is clear Cumbee continued to raise at least some issues regarding movement and pain. *See* DSOF ¶ 10, PSOF ¶ 4, Ex. A, ECF No. 144 at 3-8 (medical records indicating that during physical therapy Cumbee stated his "shoulder has been stiff all weekend" in early March, "my shoulder has been really hurting" in late March, his shoulder "only hurts when I reach back" and "feels better" in early April, his shoulder is "sore again" in late April). It appears from the medical records that Cumbee received the physical therapy prescribed in December 2004 from March 2005 to April 2005, at least seven sessions in all (with several more canceled due to lockdowns). Ex. A. at 3-8. Despite still complaining of soreness at his last physical therapy appointment, it does not appear Cumbee was seen again for the issue for many months.

Unsatisfied with his treatment, Cumbee filed a grievance on July 1, 2006 (approximately 15 months after he had been in physical therapy) complaining that he had been trying to see Dr. Ghosh to receive diagnostic testing on his right shoulder since the conclusion of his physical therapy. Ex. A. at 39. He explained that the pain was "excruciating" at times and that he was unable to lay on his right side at all. *Id.* at 40. Almost two months later, Ghosh responded on August 21, 2006 that Cumbee had been "evaluated in an offsite clinic" and a "surgery date has been scheduled." *Id.* at 41. The parties dispute the meaning of this note,[1] but agree that Cumbee

---

[1] Defendants claim that the response refers to a cyst Cumbee had on his forehead, which had been evaluated and scheduled for surgery. Def. Resp. to Pl.'s Am. Statement of Facts ("Def. Resp. to PSOF") ¶ 5. Cumbee asserts the response must have been referring to his shoulder because it was used as the basis to deny his grievance relating to the lack of treatment for his shoulder. Pl.'s Am. Resp. at 11. In fact, the opening line of the grievance makes explicit the subject is Cumbee's shoulder and ***not*** his cyst, which he noted was "the subject of another grievance." Ex. A. at 39.

had ***not*** been seen at an offsite clinic or scheduled for surgery for his shoulder problem. PSOF ¶ 6.

It is unclear in the record when Dr. Ghosh next saw Cumbee, but Cumbee did receive an MRI (magnetic resonance imaging) scan at the University of Illinois at Chicago ("UIC") on November 21, 2006 (three months after Ghosh responded to the grievance). PSOF ¶ 7. Come February, Cumbee had not been advised of the results of his MRI, so he again filed a grievance to protest the delay in receiving his MRI results. PSOF ¶ 9. Dr. Ghosh finally reviewed the MRI privately on April 27, 2007 (five months after it had been taken) and reviewed it with Cumbee on June 29, 2007 (seven months after it had been taken, four months after Cumbee had filed his grievance, and two months after Ghosh had first reviewed it). Def. Resp. to Pl. Statement of Additional Facts, ECF No. 158 ("Def. Resp. to PSOF") at ¶ 8, 10. At this point Ghosh referred Cumbee to UIC for surgery, as the MRI showed a torn rotator cuff and arthritis. *Id*. at ¶ 10.

Cumbee had his surgical consultation at UIC on September 14, 2007 (almost 10 months since his MRI and well over two years since the conclusion of his physical therapy). *Id.* at ¶ 12. The doctors recommended a total shoulder replacement, but Cumbee stated he was "not yet ready" to have such major surgery, that he wanted some time to think about his options, and requested to "come back in a few months" if he decided to have the surgery. *Id*. at ¶ 12-14. Cumbee later decided to have the surgery, signing a consent form on December 14, 2007. *Id*. at ¶ 16. At the time, UIC doctors noted that his limited motion was in part because of pain, and that his arthritis was "too far advanced" to do anything other than a full shoulder replacement. Medical Records, ECF No. 144-2. at 5. Nevertheless, for reasons unclear in the record, a partial shoulder replacement rather than a full replacement was performed. The parties dispute whether Cumbee's shoulder pain was resolved by the surgery and subsequent physical therapy. *See* Def.

Resp. to PSOF ¶ 17-18. There are indications in the medical records that Cumbee was doing better (at least before he later re-injured his shoulder in or about August 2008, which caused increased pain and reduced range of motion). *Id*. at ¶ 18.

On November 7, 2008 (roughly 14 months after his first surgery), Cumbee was referred back to UIC for his continued shoulder pain. *Id*. at ¶ 19. Originally scheduled to be seen on December 22, 2008, his appointment was canceled due to "bad weather" and he was not seen until February 2, 2009. *Id*. at ¶ 20. Cumbee had a CT (computerized tomography) scan on March 25, 2009, which was reviewed with him two months later on May 29, 2009. *Id*. at ¶ 21. The parties disagree as to whether the UIC physician had sufficient information at the May 29 appointment to proceed with treatment.[2] The UIC physician requested Cumbee come back for a follow-up appointment in two months to plan further care of his shoulder once all the necessary testing had been completed. *Id*. at ¶ 23.

Cumbee filed a third grievance on October 12, 2009, after he was not sent back to UIC for a follow-up appointment. Def. Resp. to PSOF ¶ 24. Dr. Ghosh responded to the grievance by stating that "[t]here is nothing else that can be done" and this inaction was approved as "correctly address[ing] the issue" by the grievance officer and the chief administrative officer. Ex. E, ECF No. 153. Cumbee was seen by a Stateville physician shortly thereafter on November 18, 2009, where he continued to complain that he had not been allowed to return to UIC to form a treatment plan for his shoulder. Ex. A. at 21. The physician forwarded Cumbee's file to Ghosh.

---

[2] Cumbee asserts the physician told him he had not received laboratory tests and x-rays of Cumbee's shoulder that the physician had previously requested from Stateville, while Defendants assert the medical records are ambiguous regarding when UIC requested the information from Stateville. *See* Def. Resp. to PSOF. ¶ 22. The relevant medical note reads: "At last clinic visit he was to get a CT scan, x-rays, and lab work results. The CT scan was reviewed as it was done at UIC. However, the lab results and x-rays were done at the prison hospital. We do not have the records of this. We have asked them to forward this to us. In addition we have ordered new x-rays and new labs to be done, if at all possible done at UIC." Ex. H at 3.

Following a January 2010 meeting with Ghosh, Cumbee was approved for a second CT scan on April 18, 2010. *Id*. at 22-23. The paperwork from the CT, which took place on May 11, 2010, indicates it was ordered as a result of "right shoulder pain." *Id*. at 34. Thereafter, and notwithstanding Ghosh's prior conclusion that "nothing else . . . can be done," Cumbee was approved for a second surgery to remove scar tissue in his shoulder on July 19, 2010. *Id*. at 25. This surgery was conducted on October 4, 2010 at UIC. *Id*. at 31. The parties dispute whether throughout 2010 Cumbee failed to receive prescribed pain medication. *See* Def. Resp. to PSOF ¶ 29, 30, 32. The medical records indicate pain medication was prescribed; they do not confirm or deny that it was provided. *See* Ex A. at 36-41.

Both parties agree that Cumbee has a restricted range of motion which constitutes an "impairment." Def. Resp. to PSOF ¶ 35. They dispute the degree to which it impacts Cumbee's activities. *Id*. Defendants have also introduced the deposition of a UIC physician, Dr. Goldberg, who had previously been a defendant in this lawsuit.[3] Dr. Goldberg states that Cumbee's rotator cuff tear was not the cause of his pain and that any delay in treatment "did not lead to any significant pathology." DSOF ¶ 21. Instead, Goldberg blames Cumbee's arthritis for the pain he was experiencing before his first surgery. *Id*. at ¶ 22. A September 14, 2007 note by Dr. Finlayson states that Cumbee complained of pain and limited motion, and that they would recommend a shoulder arthroplasty (replacement) surgery because his issues had not responded to physical therapy. Medical Records, ECF No. 144-2 at 7. They also state that "due to his advanced arthritis, rotator cuff repair would likely not alleviate his symptoms," although it is implied that the prescribed replacement surgery would. *Id*. However, a December 14, 2007 report indicates that at the time Cumbee's arthritis was "probably" too advanced to do a repair

---

[3] Cumbee voluntarily dismissed Goldberg from this lawsuit on January 13, 2015. Dkt. 115.

but that a full replacement could assist his symptoms, presumably including pain. *Id*. at 5. Furthermore, the surgical information Cumbee was given indicates the prescribed surgery is also a solution to pain caused by arthritis. *See* Ex. I.

## DISCUSSION

To prevail on their summary judgment motion, Dr. Ghosh and Wexford must demonstrate that there is "no genuine dispute as to any material fact" and that they are entitled to judgement as a matter of law. Fed. R. Civ. P. 56(a). There is a genuine dispute "when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Although the movants bear the burden of demonstrating no material issue exists, the plaintiff must provide evidence beyond his pleadings that his positions have support. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994).

The Eighth Amendment bars cruel and unusual punishment, and this includes "an unnecessary and wanton infliction of pain" by failing or delaying the provision of medical care. *Estelle v. Gamble*, 429 U.S. 97, 105 (U.S. 1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. at 106. The Seventh Circuit has framed this as a two part inquiry "(1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *Chapman v. Keltner*, 241 F.3d 842, 845-846 (7th Cir. 2001). When the plaintiff alleges a delay in the provision of medical services, the plaintiff must also place "verifying medical evidence" in the record that the delay had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240-1241 (7th Cir. 1996). Each of these factors is addressed in turn below.

**I. Serious Medical Need**

Defendants briefly argue that Cumbee's shoulder injury does not qualify as a serious medical condition. Def.'s Mem. 6-7. That argument merits commensurately brief attention. The Seventh Circuit has explained that a condition need not be life-threatening to qualify as a serious medical condition as long as the condition is painful.   *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). At other times, the Seventh Circuit has stated that a condition presents a serious medical need if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). Examples of medical conditions that are not serious include the common cold, a removed toenail, and a "mild case of asthma." *Id.* at 1372 (collecting cases). On the other hand, a broken nose that required surgery is a serious medical condition. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Similarly, an ear infection that was painful for several months and may have led to permanent hearing impairment is a serious medical condition. *Zentmyer*, 220 F.3d at 810.

Here, Cumbee's deposition and medical records indicate he was frequently in pain over the course of several years, had two surgeries to attempt to remedy his condition, and suffered a permanent mobility impairment (even if the extent of that impairment is a matter of dispute). Physicians diagnosed him with a torn rotator cuff and arthritis and prescribed physical therapy and the surgeries to treat those conditions. These facts independently might be sufficient to constitute a serious medical condition; the combination of them certainly meets the standard for summary judgement. A reasonable juror could certainly find that Cumbee's condition was painful and objectively serious. The mere fact that such injuries are common, *see* DSOF ¶ 13, does not mean that Cumbee's particular injury was not serious. As the Seventh Circuit recently

noted, a condition may be "normal" or common, but it is "also 'normal' to treat it." *Rivera v. Gupta*, No. 15-3462, --- F. 3d ---, 2016 WL 4703493, at *2 (7th Cir. Sept. 8, 2016). A broken hand is common, but it is also serious and painful if not treated promptly and properly.

## II. Deliberate Indifference

Next, the defendants must have acted with deliberate indifference towards Cumbee's serious medical needs. Deliberate indifference "requires the prisoner to show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Delays in treatment, even if only a few days for painful conditions, can constitute deliberate indifference if the provider was subjectively aware of the problem. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (collecting cases). However, the defendant must have a reason to know about the delays. *Compare Zentmyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir. 2000) (supervisor falsely told by deputies they were providing medication cannot be held liable for failure to provide medication). Although it is not the place of courts to question reasonable medical judgements, a plaintiff "is not required to show that he was literally ignored by the staff." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000).

There can be no question as to whether Dr. Ghosh was aware of Cumbee's condition. Ghosh repeatedly treated Cumbee, prescribing a range of treatments from permits to physical therapy to two surgeries. Defendants argue that this range of treatment is what proves Ghosh was not deliberately indifferent. However, cases like *Sherrod* (where the plaintiff was given pain medication and an enema rather than being checked for appendicitis) demonstrate that the mere provision of treatment is insufficient to insulate a provider from a claim of deliberate

indifference. The treatment must also be reasonably timely, so as not to cause the plaintiff unnecessary pain for even a few days. As the Seventh Circuit recently said "A doctor who provides some treatment may still be held liable *if he possessed a sufficiently culpable mental state.*" *Zaya v. Sood*, No. 15-1470, --- F. 3d ---, 2016 WL 4621045, at *2 (7th Cir. Sept. 6, 2016) (emphasis in original). In *Zaya*, a prison doctor delayed a prisoner from receiving follow-up care at a hospital for almost four weeks past when the hospital doctors had ordered. *Id*. at *1. Even though Dr. Sood authorized medical care at the hospital before and after the weeks of delay and stated he considered the interim care he gave the prisoner to be adequate, the Seventh Circuit found that Zaya's claim could survive summary judgement. *Id*. at *3.Here, Cumbee repeatedly suffered treatment delays spanning ***months***. Among other delays that seem to defy reasonable explanation, Ghosh did not review the November 2006 MRI ***that he had ordered*** for five months, and did not review it with Cumbee for two additional months.[4] Knowing a patient is in pain, has filed a grievance, and is losing the ability to use his arm, Ghosh authorized an expensive test that he then did not read for almost half a year. That is in addition to the treatment gap of over a year between the end of Cumbee's physical therapy and the ordering of the MRI. There is also Ghosh's 2009 grievance response that "nothing else" could be done for Cumbee, even though he had referred Cumbee to UIC and they had requested a follow-up appointment and further testing in order to treat his problems. After Cumbee's second CT scan, 14 months after the first, Cumbee was promptly approved and scheduled for surgery without any seeming change in status.

---

[4] The defendants have failed to raise any statute of limitations defense despite a large number of relevant events occurring more than two years before the lawsuit was filed. As it has not been raised, the Court considers any potential statute of limitations defense waived. *See Metropolitan Housing Dev. Corp. v. Village of Arlington Heights,* 558 F.2d 1283, 1287 (7th Cir. 1977).

Looking at these delays alone and leaving aside other potentially relevant issues, such as the disputed facts between the parties regarding the provision of pain relief medication, a reasonable juror could conclude that Ghosh disregarded an excessive risk to Cumbee's health by failing to timely address his medical tests or send him for follow up. A delay of even a few days can demonstrate deliberate indifference when a patient is known to be in pain. If a patient's condition is sufficiently serious to warrant sending them for an expensive imaging test, the least a doctor can do it read the results and use them to attempt to alleviate the patient's pain in a timely fashion.

### III. Verifying Medical Evidence

The final hurdle Cumbee faces in getting to a jury is the requirement that he present "verifying medical evidence" that the delays actually harmed him. *Langston v. Peters*, 100 F.3d 1235, 1240-1241 (7th Cir. 1996). Often, this may require the presentation of expert testimony. *See, e.g.*, *Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997). However, a plaintiff need not provide expert testimony if the medical records submitted would "assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." *Williams v. Liefer*, 491 F.3d 710, 715-716 (7th Cir. 2007). Medical records which indicate remedial surgeries and notations of pain can be sufficient for a jury to reach the conclusion a delay was harmful. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) ("Grieveson supplied medical records indicating that he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist. Grieveson later underwent painful nose surgery. The evidence Grieveson provided would certainly help a jury determine whether the delay "unnecessarily prolonged and exacerbated" Grieveson's pain, and thus qualifies as verifying medical evidence that supports a

genuine issue of material fact regarding the seriousness of Grieveson's medical condition.")
(internal citations omitted).

The defendants insist that the first surgery was helpful in alleviating Cumbee's pain and
other concerns and cite to notes within the medical record to support their position. Def. Resp. to
PSOF ¶ 17. So it appears, but the effectiveness of the treatment Cumbee needed does not help
their cause. A jury which accepted the defendants' version of the facts could logically conclude
that Cumbee was harmed by the delay in receiving the surgery caused by Ghosh's delay in
reading the 2006 MRI. If the surgery helped with the pain, then Cumbee should not have had to
wait seven months for Ghosh to read the test and schedule him for surgery.

The defendants also claim that Cumbee's pain was due to his arthritis and provide
medical testimony to that effect. DSOF ¶ 21-22. However, that same doctor stated that "patients
**with arthritis and pain**" are often offered this surgery and later went on to prescribe two
surgeries for Cumbee to remedy his symptoms. *Id*. at ¶ 20 (emphasis added). Cumbee has
submitted evidence that the same surgery he had is used to treat pain and limited mobility caused
by various types of arthritis. *See* Ex. I. The inference that earlier surgery would have provided
earlier pain relief is compelling. Furthermore, the same doctor indicated in his treatment notes
that the advanced nature of the arthritis is what limited Cumbee's surgical options. A reasonable
juror could accept the doctor's testimony in whole and come to the conclusion that the arthritis
may have been advanced due in part to the delays in providing the surgery, which is a known
treatment for this kind of arthritis.

A more basic reading of the medical records, more in line with *Grieveson*'s actual facts,
would simply note that there are numerous mentions of Cumbee being caused pain by his
shoulder, including at the end of treatments like his first round of physical therapy. The fact that

Cumbee often went for months without treatment following these complaints could lead a reasonable juror to conclude that Cumbee was harmed by the continued untreated pain. This is not to suggest that a jury could *only* find that the delays in fact harmed Cumbee. A juror could also credit some of Cumbee's testimony, which tends to suggest none of his medical care was effective in relieving his pain. If that is the case, then a juror could reasonably conclude that the delay did not harm Cumbee because he would have been in pain either way.

Overall, the Court finds that Cumbee has submitted sufficient medical records to carry his burden with proving there is a disputed material issue with regard to whether he was harmed by the delays in his care. Therefore, the Court denies the defendants' motion for summary judgement as to Dr. Ghosh.

**IV. Wexford's Policies and Practices**

In order for Cumbee's claim against Wexford to survive summary judgement, Cumbee must have suffered his injuries as a result of an official policy or widespread practice. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). This practice may be unofficial, such as by condoning a series of bad acts. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). However, Cumbee concedes that Wexford's policy was to provide timely care. PSOF ¶ 11. Nor has any evidence been submitted that Wexford was aware of Dr. Ghosh's conduct, much less condoned it. Cumbee's primary evidence that Wexford condoned such bad acts is a series of unrelated lawsuits that have been brought against Wexford, which are listed in his complaint. Several of the listed lawsuits had not come to judgement when the complaint was filed. *See* Second Amended Compl. ¶ 86-88. Beyond that they all involve delay and Dr. Ghosh in some way, Cumbee does not point the Court to any overarching pattern in these lawsuits. The medical conditions are different in each lawsuit, as are the delays (for

example, failure to provide medication or a proper diet). *See id.* Even if all of those lawsuits resulted in liability for Wexford, Cumbee must still provide some evidence that Wexford was a "direct cause" of the present alleged violations. *Estate of Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Such action must be by Wexford itself, not mere *respondeat superior* liability for an employee's reprehensible conduct. *Id*. Cumbee has provided no evidence beyond his pleading that Wexford had any practice or policy that condoned Ghosh's conduct, so the Court grants the defendant's summary judgement motion as to Wexford.

\* \* \*

In conclusion, the defendants' motion for summary judgement is granted as to Wexford and denied as to Dr. Ghosh. Cumbee has demonstrated a dispute of material fact as to the cause of his harm, and enough evidence has been placed in the record that a reasonable juror could conclude in favor of either party. However, no material dispute has been supported with regard to Wexford, which appears to have had no knowledge of the delays Cumbee suffered during his years under Dr. Ghosh's care.

Dated: September 28, 2016

John J. Tharp, Jr.
United States District Judge